## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD KECK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIV. A. NO. 02-CV-4071 |
| | : | |
| PPL ELECTRIC UTILITIES CORPORATION, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1-PH/1767505.4

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................... 1

II.   FACTS ............................................................................................................. 1

    A.    Plaintiff's Employment at PPL ............................................................. 1

    B.    CBA Governing Plaintiff's Employment ............................................. 2

    C.    Plaintiff's Medical Leave of Absence ................................................. 3

    D.    The Elimination of Plaintiff's Position ................................................. 3

    E.    Plaintiff's Notice of Return from LTD Leave ....................................... 4

    F.    PPL's Attempt to Reinstate Plaintiff .................................................... 4

    G.    Plaintiff's Decision Not to File a Grievance ......................................... 5

    H.    The Instant Litigation .......................................................................... 6

III.  ARGUMENT ................................................................................................... 6

    A.    Standard for Summary Judgment ....................................................... 6

    B.    LMRA Section 301 Preempts Plaintiff's Complaint ............................ 7

        1.    Individual Employees Must Exhaust the Grievance
            and Arbitration Procedures of a CBA Before Filing Suit ........... 7

        2.    Plaintiff's Claim Against PPL Is Essentially One for Violation of
            the CBA ................................................................................... 9

    C.    Plaintiff's Attempt to Recast His CBA Dispute as One for an
        ADA Violation Must Be Rejected ....................................................... 12

        1.    Section 301 Preempts Statutory Claims that
            Rest on An Interpretation of an Underlying CBA .................... 12

        2.    Plaintiff Has No Independent Basis for His Statutory Claim ................. 15

IV.   CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

## CASES

Anderson v. Consol. Rail Corp.,
297 F.3d 242 (3d Cir. 2002)............................................................................6

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986)......................................................................................6

Angst v. Mack Trucks, Inc.,
969 F.2d 1530 (3d Cir. 1992)........................................................................13

Celotex Corp. v. Catrett,
477 U.S. 317 (1986)...................................................................................6, 7

Corr v. MTA Long Island Bus,
27 F. Supp. 2d 359 (E.D.N.Y. 1998) ............................................................16

DelCostello v. Int'l Bhd. of Teamsters,
462 U.S. 151 (1983)..................................................................................8, 12

Eible v. Houston,
No. Civ. A. 96-4655, 1998 WL 303692 (E.D. Pa. Apr. 21, 1998)
aff'd without opinion, 187 F.3d 625 (3d Cir. 1999), cert. denied, 528 U.S. 878 (1999) ...............16

Groman v. Township of Manalapan,
47 F.3d 628 (3d Cir. 1995)............................................................................7

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574 (1986)......................................................................................7

Ness v. Marshall,
660 F.2d 517 (3d Cir. 1981)...........................................................................7

Pennsylvania Nurses Ass'n v. John F. Kennedy Med. Ctr.,
No. 01-2276, 2003 WL 730914 (E.D. Pa. Mar. 5, 2003) ...............................6

Republic Steel Corp. v. Maddox,
379 U.S. 650 (1965)......................................................................................8

Sebrowski v. Pittsburgh Press Co.,
188 F.3d 163 (3d Cir. 1999)...................................................................8, 12, 13

Shafnisky v. Bell Atlantic, Inc.
No. Civ. A. 01-3044, 2002 WL 31513551 (E.D. Pa. Nov. 5, 2002)...............16

Shannon v. City of Philadelphia,
No. Civ. A. 98-5277, 1999 WL 1065210 (E.D. Pa. Nov. 23, 1999)...............16

Steelworkers v. Warrior & Gulf Navigation Co.,
363 U.S. 574 (1960)..................................................................................................8, 11

Taylor v. Phoenixville Sch. District,
184 F.3d 296 (3d Cir. 1999)...............................................................................17

Textile Workers Union of Am. v. Lincoln Mills of Ala.,
353 U.S. 448 (1957)............................................................................................7

Thankachen v. Cardone Indus.,
Civ. A. No. 95-181, 1995 WL 580342 (E.D. Pa. 1995) ................................12

United Steelworkers v. American Manufacturing Co.,
363 U.S. 564 (1960)..........................................................................................10

Vadino v. A. Valey Eng'rs,
903 F.2d 253 (3d Cir. 1990)..........................................................................12, 13

Vines v. Sloss Industrial Corp., CV96-H-546-S,
1996 U.S. Dist. LEXIS 22504 (N.D. Ala. Nov. 25, 1996) ...........................14

Wright v. Universal Maritime Corp.,
525 U.S. 70 (1998)............................................................................................15

## STATUTES

29 C.F.R. 1630, App. § 1630.2(o) ..................................................................15

29 U.S.C. § 185 ............................................................................................1, 7

42 U.S.C. §§ 12101 et seq. ...............................................................................1

## RULES

Fed. R. Civ. P. 56(c) ........................................................................................6

Fed. R. Civ. P. 56(e) ........................................................................................7

# I. **INTRODUCTION**

In this action, Plaintiff Richard Keck claims that his former employer, PPL Electric Utilities Corporation ("PPL"), violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA"), by (i) denying him certain enhanced retirement benefits provided for in the collective bargaining agreement ("CBA") that governed his employment; and (ii) denying him the right to bump a more junior employee upon his return from a two year LTD leave. Because the enhanced benefits and bumping rights to which Plaintiff lays claim stem entirely from the CBA, his exclusive remedy is to pursue those claims through the CBA's grievance and arbitration machinery. Having failed to do so, Plaintiff is precluded from raising those claims in this Court under the guise of an ADA action, as such action is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. The Court should therefore grant summary judgment for PPL.

# II. **FACTS**

## A.    **Plaintiff's Employment at PPL**

Plaintiff commenced employment at PPL on February 7, 1966. (FACTS, at ¶ 1.)[1/] Effective May 1991, Plaintiff became a Designer-Drafter in PPL's Transmission & Design Department. (Id.)

As a Designer-Drafter, Plaintiff was a member of the bargaining unit represented by Local 1600 of the International Brotherhood of Electrical Workers ("Local 1600" or "Union"). (Id. at ¶ 3.) During the course of Plaintiff's career at PPL, he held various Union

---

[1/]    References to the accompanying Joint Stipulation of Facts are cited as "FACTS, at ___."

positions, including steward, chief steward, business representative, local vice-president,

disability committee member, and collective bargaining representative. (Id. at ¶ 4.)

**B.    CBA Governing Plaintiff's Employment**

At all materially relevant times herein, Plaintiff's employment was governed by a

CBA between PPL and the Union dated May 18, 1998. (See id. at ¶ 5.) The CBA contains a

comprehensive and detailed grievance and arbitration process that defines "grievance" broadly,

as "any dispute or disagreement arising over the meaning and application of the terms and

provisions of this Agreement," and which provides for arbitration if settlement of a grievance

cannot be reached. (Id. at ¶ 6.)

CBA Art. X, entitled "Placement Process," governs the treatment of active

employees who are "displaced" when their jobs are eliminated. (Id. at ¶ 8.) It is intended to

> provide opportunities for the placement of displaced employees
> and eliminate temporary letters while streamlining the placement
> process. It is not intended solely to provide severance, layoff or
> retirement opportunities for employees who have not been affected
> by this process.

(Id.) (Emphasis added.) Art. X contains the formula for determining certain enhanced retirement

benefits that are available to "displaced" employees, aged 55 and over, who elect to retire. (Id.)

CBA Exh. L, entitled "Long-Term Disability Conditions of Return," governs the

return of employees who have been on long-term disability ("LTD") leave. (FACTS, at ¶ 9.) It

provides that employees who desire to return from an LTD leave of longer than six months but

less than two years may return to their former job "provided . . . such a vacancy exists," and, if

no such vacancy exists, to an "available job vacancy within the scope of their experience and

skills." (Id.) It does not afford employees returning from LTD leave any bumping rights. (Id. at

¶ 28.)

2

C.    **Plaintiff's Medical Leave of Absence**

On February 1, 1999, Plaintiff commenced an extended leave of absence for medical reasons. (Id. at ¶ 10.) According to a note submitted by Plaintiff's physician, Plaintiff was "fully disabled" due to "major depression." (Id.)[2/] Plaintiff did not request that his leave be treated as a reasonable accommodation under the ADA, and he did not give PPL a date when he anticipated returning to work. (Id. at ¶11.)

Effective September 25, 1999, Plaintiff's leave qualified for long-term disability ("LTD") treatment under the Company's LTD policy. (Id. at ¶ 12.) Because Plaintiff's leave was predicated on mental, rather than physical, illness, Plaintiff was entitled to a maximum of 24 months of paid leave. (Id.)

D.    **The Elimination of Plaintiff's Position**

On October 11, 1999, Plaintiff's supervisor, Robert Sproesser, sent a letter to the Union indicating that PPL did "not plan to back fill" Plaintiff's position. (FACTS, at ¶ 13.) In addition, on January 7, 2000, PPL notified the Union of its plan to "displace" the two other Designer-Drafters in Plaintiff's department. (Id. at ¶ 15.)

It is undisputed that as of the dates of these two letters, Plaintiff was not yet age 55 and was therefore ineligible for the enhanced retirement package set forth in CBA Art. X. (Id. at ¶ 17.) In addition, Plaintiff was still on LTD leave and was unable to perform the essential functions of a Designer-Drafter position. (Id.)

---

2/    For purposes of this Motion for Summary Judgment, PPL does not contest that Plaintiff suffered from a disability protected by the ADA.

**E.**    **Plaintiff's Notice of Return from LTD Leave**

On August 22, 2001, Plaintiff wrote to Sproesser indicating his plan to return to work September 24, 2001 (the date his LTD benefits would expire). (Id. at ¶¶ 20, 21.) The letter stated:

> In accordance with Exhibit 'L', Section I, Paragraph D, sub-paragraph 2 of the Current Labor Agreement between PPL, Inc. and IBEW Local Union 1600, please be informed of my medical release to return to work. . . .

(Id. at ¶ 21.) The letter also requested that Plaintiff's name be included on PPL's Voluntary Retirement List. (Id.)

**F.**    **PPL's Attempt to Reinstate Plaintiff**

Following receipt of Plaintiff's letter, Sproesser contacted Andrew Megna, PPL Labor Relations Administrator, to determine how Plaintiff's return to work should be handled under the CBA. (FACTS, at ¶ 22.) Megna consulted with his supervisor and others in the PPL Labor Relations Group, and all agreed that CBA Exh. L, Par. 2D, not CBA Art. X, applied. (Id. at ¶ 23.) As there were no vacant Designer-Drafter positions, PPL began to look for another position for which Plaintiff was qualified and medically released to perform pursuant to CBA Exh. L. (Id. at ¶ 24.)

On August 29, 2001, PPL asked Plaintiff to sign a release so that its medical department could obtain and review his records to determine which vacant positions he was medically cleared to perform. (Id. at ¶ 25.) Plaintiff refused to sign the necessary release. (Id. at ¶ 26.) He would only release information relevant to the Designer-Drafter job. (Id.)

On September 21, 2001, Sproesser and Megna notified Plaintiff of several vacant positions for which he might be eligible. (Id. at ¶ 27.) Plaintiff elected not to pursue any of

these jobs but insisted that he be permitted to bump a more junior employee, Richard Marquette, and be reinstated into a Designer-Drafter position. (Id.)

On September 28, 2001, PPL requested the assistance of the Union in securing an unrestricted medical release from Plaintiff, so that it could determine what jobs, other than Designer-Drafter jobs (of which there were no vacancies), Plaintiff was medically cleared to perform. (Id. at ¶ 30.) PPL also sent Plaintiff a second letter requesting that he sign an unaltered medical release. (Id.)

On October 7, 2001, Plaintiff submitted to PPL a letter indicating his intent to retire effective November 1, 2001, and he did so. (Id. at ¶ 31.) Plaintiff received the standard retirement benefits available to PPL employees, but he did not receive the enhanced retirement benefits available to employees over age 55 who elect to retire upon being "displaced" under CBA Art. X. (Id. at ¶ 32.)

G.    **Plaintiff's Decision Not to File a Grievance**

Plaintiff believes that PPL violated the CBA in his case, (i) by denying him the enhanced retirement benefits outlined in CBA Art. X, and (ii) by denying him the right to bump Marquette and be reinstated to a Designer-Drafter position upon his return from LTD leave. (Id. at ¶ 34.) Plaintiff had discussions with Union Steward, Keith Lambert, about these matters, and Lambert advised him to file a grievance. (Id. at ¶ 35.)

Plaintiff ignored such recommendation because he thought the grievance process "would take too long," and because he did not "have faith in the union as far as getting [his] case heard." (Id. at ¶ 36.)

**H.     The Instant Litigation**

Plaintiff filed a Complaint in the instant action on June 26, 2002, alleging that PPL's treatment of him violated the ADA.  (Id. at ¶ 38.)

As discussed in detail below, Plaintiff's Complaint is preempted by LMRA Section 301 and must be dismissed for failure to exhaust the CBA grievance and arbitration machinery.

### III.  ARGUMENT

### LMRA SECTION 301 PREEMPTS PLAINTIFF'S ADA CLAIM

**A.     Standard for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure directs that summary judgment "shall" be entered if there is no genuine issue of material fact.  FED. R. CIV. P. 56(c).  Summary judgment must be entered against a party who does not offer admissible evidence sufficient to establish every element essential to his or her case and on which he or she bears the ultimate burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 327 (1986) (stating that summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action'") (citation omitted); Anderson v. Consol. Rail Corp., 297 F.3d 242, 247 (3d Cir. 2002) (affirming summary judgment in favor of defendants).  Furthermore, "'[i]f the evidence [offered by the non-moving party] is merely colorable, or is not significantly probative,'" summary judgment is appropriate.  Pennsylvania Nurses Ass'n v. John F. Kennedy Med. Ctr., No. 01-2276, 2003 WL 730914, at *4 (E.D. Pa. Mar. 5, 2003) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 249-50 (1986)).

To survive PPL's motion for summary judgment, Plaintiff "must go beyond the [initial] pleadings" and designate specific, admissible facts supporting each element of his claim to show that there is a genuine issue of material fact for trial. Celotex, 477 U.S. at 324; see Groman v. Township of Manalapan, 47 F. 3d 628, 633 (3d Cir. 1995); FED. R. CIV. P. 56(e). "[B]are assertion[s], conclusory allegations, or suspicions" as to material facts are insufficient. Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981).

Moreover, disputes over non-material facts will not defeat summary judgment, as Plaintiff's failure to produce sufficient evidence to support an essential element of his claim "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323; see Groman, 47 F.3d at 633 ("The party contesting the motion must demonstrate a dispute over facts that might affect the outcome of the suit."). "Where the record taken as a whole could not lead a rational trier of fact to find for the [plaintiff]," summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Under these standards, there can be no doubt that the Court should grant summary judgment for PPL.

**B.    LMRA Section 301 Preempts Plaintiff's Complaint**

**1.    Individual Employees Must Exhaust the Grievance and Arbitration Procedures of a CBA Before Filing Suit**

LMRA Section 301 ("Section 301") provides for federal jurisdiction over "[s]uits for violation of contracts between an employer and labor organization," and "authorizes federal courts to fashion a body of federal law for the enforcement of" those contracts. 29 U.S.C. § 185(a); Textile Workers Union of Am. v. Lincoln Mills of Ala., 353 U.S. 448, 450-51 (1957).

In fashioning federal law under Section 301, the Supreme Court has repeatedly held that where a dispute arises under a collective bargaining agreement that provides for the

7

1-PH/1767505.4

submission of disputes to arbitration, individual employees must exhaust those procedures before filing suit.  Republic Steel Corp. v. Maddox, 379 U.S. 650, 652 (1965) ("[F]ederal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by the employer and union as a mode of redress."); see also Sebrowski v. Pittsburgh Press Co., 188 F.3d 163, 168 (3d Cir. 1999) (same).

The requirement that employees exhaust their contractual remedies before filing suit is essential to preserve the important interests of employees, employers and unions in negotiating and administering collectively bargained agreements.  As the Supreme Court has held:

> A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it.  In addition to cutting across the interests already mentioned, it would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. . . .  A rule creating such a situation "would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements."

Republic Steel, 379 U.S. at 653 (quoting Local 174 v. Lucas-Flour Co., 369 U.S. 95, 103 (1962)) (emphasis added).  See also Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581 (1960) ("[T]he grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government.") (emphasis added); DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 169 (1983) ("The grievance and arbitration procedure often processes disputes involving interpretation of critical terms in the collective bargaining agreement affecting the entire relationship between company and union.") (citations omitted).

Thus, under established Supreme Court precedent, when an employee has a dispute with his employer over the meaning and application of a collective bargaining agreement, that employee must exhaust his contractual remedies before filing suit.

8

2.    <u>**Plaintiff's Claim Against PPL Is Essentially One for Violation of the CBA**</u>

Here, there can be no doubt that Plaintiff's dispute with PPL is a dispute over the meaning and interpretation of the CBA.

Plaintiff claims that neither PPL's October 11, 1999 or January 7, 2000 letter to the Union (in which PPL indicated its plan not to backfill Plaintiff's position and to eliminate the positions of the other Designer-Drafters in his department, respectively), constituted adequate notice to the Union under the CBA of PPL's intention to eliminate Plaintiff's job position and that, therefore, PPL did not actually eliminate Plaintiff's position until the fall of 2001 when he attempted to return to it. Plaintiff argues that PPL therefore should have treated him as "displaced" under CBA Art. X in the fall of 2001. Plaintiff argues that if PPL had treated him as "displaced," he would have had the right to either (i) retire and receive the enhanced retirement benefits available to "displaced" employees who are age 55 and over; or (ii) bump Marquette and be reinstated into a Designer-Drafter position.

PPL disagrees with Plaintiff's interpretation of the effect of its letters to the Union and believes that it did eliminate Plaintiff's job position under the CBA while Plaintiff was on LTD leave. PPL also believes that the "displaced" provisions of CBA Art. X were inapplicable to Plaintiff in connection with his return from LTD leave and that only CBA Exh. L applied. Under CBA Exh. L, employees like Plaintiff who desire to return from an LTD leave of longer than six months but less than two years, may return to their former job "provides . . . such a vacancy exists," and, if no such vacancy exists, to an available job vacancy for which they are qualified. It is beyond doubt that PPL applied this provision appropriately in Plaintiff's case.

Alternatively, Plaintiff claims that PPL should have treated him as "displaced" when it decided not to back fill his position and/or to eliminate the positions of the other

Designer-Drafters, while Plaintiff was still on LTD leave. Plaintiff admits, however, that at that time, he was not eligible for the enhanced retirement package because he was not yet age 55, and he was not able to perform a Designer-Drafter job because he was still on disability leave. (See FACTS, at ¶¶ 17, 18.) The only way that Plaintiff can prevail on his claim against PPL, therefore, is to establish that the CBA somehow required PPL to "displace" him while he was on LTD leave, but to freeze his status until he returned from leave (if in fact he ever returned) and then permit him the option of either retiring with enhanced benefits or bumping Marquette then.

PPL categorically rejects such a strained reading of the CBA. The plain language of CBA Exh. L provides for no bumping rights, "displaced" employee rights, or "freezing of status" rights, as Plaintiff would have it. PPL's view is that the "displaced" employee rights outlined in CBA Art. X have absolutely no applicability to employees who are on LTD leave under CBA Exh. L. (Id. at ¶ 23.)[3/]

Regardless of the respective merits of the parties' disagreements concerning the CBA's requirements for notice to the Union concerning the elimination of job positions and the applicability of the CBA term "displaced" to employees on LTD leave, however, this case must be dismissed because only an arbitrator is empowered to resolve those disagreements. As the Supreme Court held in United Steelworkers v. American Manufacturing Co., 363 U.S. 564, 568 (1960):

---

[3/]     This interpretation is consistent with PPL's duty to provide employees with LTD benefits for the duration of their leave (or, in the case of employees like Plaintiff who take LTD leave in connection with a mental impairment, for up to two years). Were PPL to "displace" employees while they were on LTD leave, that would work as a significant disadvantage to the vast majority of LTD employees who would lose their employment, benefits and rights to future reinstatement at PPL. Only in the unique situation of an employee age 55 or older who desires to retire during his LTD leave, rather than collect his maximum LTD benefits and then be reinstated at a future date, does PPL's application of the CBA arguably disadvantage the employee.

> Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. . . . <u>The courts . . . have no business weighing the merits of [a] grievance</u>, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. . . .

(Emphasis added.)

The CBA at issue here contains an extremely broad grievance and arbitration clause that indisputably covers the asserted dispute. (<u>See</u> FACTS, at ¶ 6.) It defines "grievance" as "any dispute or disagreement arising over the meaning and application of the terms and provisions of this Agreement," and provides that if settlement of a grievance is not reached, "either party shall have the right to submit it to arbitration." (<u>Id.</u>) The parties' disputes over the requirements for notice to the Union about job elimination and the meaning and application of the CBA term "displaced" clearly fall within this definition. <u>See</u> <u>Warrior & Gulf Navigation Co.</u>, 363 U.S. at 582-83 ("An order to arbitrate should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible [to] an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.").

Indeed, Plaintiff himself acknowledged that his right to reinstatement after his LTD leave stemmed from the CBA, when he wrote to Sproesser on August 22, 2001 that "[i]n accordance with Exhibit 'L', Section I, Paragraph D, subparagraph 2 of the Current Labor Agreement between PPL . . . and Local Union 1600, please be informed of my medical release to return to work." (FACTS, at ¶ 21.) The Union, also, considered Plaintiff's dispute with PPL to be one that derived from the CBA that could have been grieved. (<u>Id.</u> at ¶ 35.) The Union actually recommended that Plaintiff file a grievance. (<u>Id.</u>) Plaintiff, however, took it upon himself to ignore such recommendation and to file a court action instead. (<u>Id.</u> at ¶ 36.) These

11

undisputed facts preclude Plaintiff from prevailing here.[4]

      The Court should hold that Section 301 preempts Plaintiff's claim and enter summary judgment for PPL.

**C.    Plaintiff's Attempt to Recast His CBA Dispute
as One for an ADA Violation Must Be Rejected**

      Plaintiff's attempt to restate his CBA claim as one for violation of the ADA does not save his case.

     **1.    Section 301 Preempts Statutory Claims that
Rest on An Interpretation of an Underlying CBA**

      It is beyond cavil that an employee cannot circumvent the grievance and arbitration procedures of a CBA by masking a contractual claim as one for statutory violation. Where an employee's claim rests on an interpretation of a CBA, that claim is preempted by Section 301 and must be arbitrated.

      The Third Circuit has repeatedly dismissed federal statutory claims brought by employees where such claims were dependent on CBA interpretation. In <u>Vadino v. A. Valey Engineers</u>, 903 F.2d 253, 266 (3d Cir. 1990), for example, the court rejected an employee's attempt to restate a CBA wage claim as one for violation of the Fair Labor Standards Act ("FLSA"). The employee in <u>Vadino</u> claimed that his employer had paid him a regular wage rate

---

[4]    The only exception to the requirement that an employee exhaust his CBA remedies prior to filing suit is when the employee claims that he was precluded from pursuing those remedies because the union breached its duty of fair representation. <u>DelCostello</u>, 462 U.S. at 163-65; <u>Sebrowski</u>, 188 F.3d at 168. Plaintiff's admitted rejection of his Union's recommendation that he file a grievance precludes application of this exception here. <u>See Sebrowski</u>, 188 F.3d at 168 (holding that exception to exhaustion requirement did not apply because plaintiffs "have not contended that the Union wrongfully refused to pursue their cause"); <u>Thankachen v. Cardone Indus.</u>, Civ. A. No. 95-181, 1995 WL 580342, at *3 (E.D. Pa. 1995) (granting judgment for defendant on preemption grounds where "[t]here [was] no indication that Plaintiff attempted to file a grievance with the union").

lower than that required in the CBA, and that this underpayment of regular wages resulted in a

corresponding underpayment of overtime wages in violation of the FLSA. The Vadino court

held that plaintiff's FLSA claim was dependent upon his unproven contention that he was

entitled to a higher regular wage rate under the CBA and therefore "rest[ed] on [an]

interpretation[] of the underlying collective bargaining agreement." 903 F.2d at 266.

Accordingly, the court held that the employee could not sustain his court action without first

exhausting the CBA's arbitration procedures, and summary judgment for the employer was

appropriate. Id.; see also Sebrowski, 188 F.3d at 169-170 (affirming summary judgment for

employer on plaintiffs' ERISA claim, reasoning that it was "essentially a contract-based claim

because the defendants may be liable only if the plaintiffs establish that they failed to enforce a

right conferred under the terms of the [collectively bargained] plan"); Angst v. Mack Trucks,

Inc., 969 F.2d 1530, 1537-38 (3d Cir. 1992) (holding that because plaintiffs could not prevail on

their court claim without first demonstrating that the employer had violated a collectively

bargained contract, their claim was dependent on that contract, and "the district court was

obliged to dismiss their suit").

   As in these cases, Plaintiff's claim against PPL is entirely dependent on an

interpretation of the CBA:  it rests solely on an interpretation of the CBA's job elimination

provisions, the meaning of the term "displaced" in CBA Art. X, and how that provision interacts,

if at all, with the LTD provisions of CBA Exh. L. Indeed, if an arbitrator agrees with PPL's

interpretation of the CBA, then Plaintiff had no right in the first place to receive the enhanced

retirement benefits he seeks or to bump Marquette, thereby precluding any claim that PPL

subjected him to an adverse employment action in violation of the ADA.  Conversely, if an

arbitrator agrees with Plaintiff's interpretation of the CBA, then Plaintiff will be awarded the

13

enhanced retirement benefits and/or bumping rights he seeks without need for judicial involvement.

The court addressed facts virtually identical to those present here and rejected an employee's attempt to circumvent a CBA's grievance and arbitration machinery in <u>Vines v. Sloss Indus. Corp.</u>, CV96-H-546-S, 1996 U.S. Dist. LEXIS 22504 (N.D. Ala. Nov. 25, 1996). The plaintiff in that case had taken a medical leave and filed a worker's compensation claim in connection with a back injury. The CBA required the employer to reinstate the employee to his prior job if he "returned to work" within two years of the start of his medical leave; if he did not, the employer had the right to terminate his employment. Immediately prior to the two-year cut-off date, the plaintiff submitted a note from his physician releasing him to return to work, but with a 50-pound lifting restriction that precluded him from performing his prior job. Reasoning that plaintiff had not "returned to work" under the CBA in light of this lifting restriction, the employer terminated his employment. The plaintiff filed suit, arguing that he had been discharged in retaliation for his workers' compensation claim in violation of state statutory law. The court dismissed the suit, reasoning that "the central issue that the parties appear to want to litigate is whether plaintiff was entitled to return to work under the CBA." <u>Id.</u> at *12-13. The court explained that

> [b]ut for the CBA's provision allowing him to return to work within two years, plaintiff would have had no right to return to his former job. . . In other words, to prove that he would have been able to return to work but for the alleged retaliation, plaintiff will necessarily have to prove that he was entitled to do so under the terms of the CBA.

<u>Id.</u> at *12 (emphasis added). Because the plaintiff had not exhausted the CBA arbitration procedures, the court held, the employer was entitled to judgment as a matter of law. <u>Id.</u>

The Court should follow this authority and dismiss Plaintiff's statutory claim

14

because it is entirely dependent upon an interpretation of the CBA.[5/]

### 2.    Plaintiff Has No Independent Basis for His Statutory Claim

Finally, Plaintiff has no independent basis for establishing an ADA violation.

Plaintiff's attempt to state an ADA claim by arguing that "but for" his disability, he would have been "displaced" and had the right to receive enhanced benefits or bump another employee is unavailing. To the extent Plaintiff lost the opportunity to receive enhanced benefits or bump another employee when PPL eliminated his position, that occurred not because of his disability, but because of his leave of absence. Undoubtedly, any disabled employee who takes a long-term leave of absence receives different treatment than a non-disabled employee who continues to perform his job function -- he does not receive his salary during the leave, and he may miss out on valuable work experience, overtime pay, and promotional opportunities. But such missed opportunities do not give rise to an ADA claim, for the ADA does not require employers to give non-working, disabled employees the same treatment as working, non-disabled employees. To the contrary, the ADA only requires employers, in certain circumstances, to offer *unpaid* leaves of absence to disabled employees to accommodate their disabilities, when such leaves will enable those employees to later return to the workforce and perform the essential functions of their jobs. See 29 C.F.R. 1630, App. § 1630.2(o).

---

[5/]    For this reason, this case is fundamentally different from Wright v. Universal Maritime Corp., 525 U.S. 70 (1998), where the Court held that an employee was not required to arbitrate an ADA claim under a collective bargaining agreement. The dispute there concerned whether the employee was "qualified" to perform his job, as that term is used in the ADA; it did not "concern . . . the application or interpretation of any CBA." 525 U.S. at 78-79. By contrast, here the dispute concerns whether PPL should have treated Plaintiff as "displaced" when it eliminated his position, as that term is used in the CBA; it indisputably concerns the application and interpretation of the CBA.

Here, PPL went above and beyond any statutorily prescribed duty with respect to Plaintiff when it afforded him the right to be reinstated into a vacant position upon his return from a 2-year LTD leave, pursuant to CBA Exh. L. PPL had no duty to do so under the ADA. See Shafnisky v. Bell Atlantic, Inc., No. Civ. A. 01-3044, 2002 WL 31513551, at *7 (E.D. Pa. Nov. 5, 2002) (granting summary judgment for employer that discharged employee who was on medical leave for more than one year, pursuant to the routine operation of its medical leave policy, reasoning that "an employer which has provided an employee with a period of disability leave does not violate the ADA by refusing thereafter indefinitely to extend her leave, even on an unpaid basis"); Shannon v. City of Philadelphia, No. Civ. A. 98-5277, 1999 WL 1065210, at *5 (E.D. Pa. Nov. 23, 1999) ("A leave for an 'indefinite' period of time . . . is not a reasonable accommodation, particularly where the employee presents no evidence of the expected duration of the impairment."); Eible v. Houston, No. Civ. A. 96-4655, 1998 WL 303692, at *3, *4 (E.D. Pa. Apr. 21, 1998) (granting summary judgment for employer that discharged employee, pursuant to company policy, after the employee failed to return to work after a one-year medical leave, reasoning that under the ADA, "an employer is not required to provide [leave] indefinitely"), aff'd without opinion, 187 F.3d 625 (3d Cir. 1999), cert. denied, 528 U.S. 878 (1999); Corr v. MTA Long Island Bus, 27 F. Supp. 2d 359, 368 (E.D.N.Y. 1998) (rejecting employee's claim that employer had violated the ADA by refusing to reinstate him after a two-year long medical leave, reasoning that "apart from its obligations under the [CBA], [the

16

employer] had no duty to keep Plaintiff's job open during his convalescence").[6/]

Thus, the rights that Plaintiff attempts to vindicate here do not stem from the ADA, but from the CBA, and, as set forth at length above, any dispute over those rights must be resolved through the grievance and arbitration machinery of the CBA, not in federal court.

## IV.    CONCLUSION

For all of the above reasons, the Court should grant summary judgment for PPL.

Respectfully submitted,

MICHAEL J. OSSIP (I.D. NO. 30912)
AMANDA D. HAVERSTICK (I.D. NO. 85069)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103
(215) 963-5761/5377

ANDREW K. WILLIAMS (I.D. NO. 81565)
PPL SERVICES CORP.
2 North Ninth Street
Allentown, PA 18101
(610) 774-4114

Attorneys for Defendant
PPL Electric Utilities Corporation

Dated:  April 24, 2003

---

[6/]    Even if Plaintiff had a right to reinstatement under the ADA, he could not claim that PPL denied him such right, for PPL made every effort to place Plaintiff into a vacant position upon his return from LTD leave, but Plaintiff blocked such efforts by refusing to provide PPL with an unrestricted medical release, rejecting PPL's proposed job vacancies, and voluntarily electing to retire. (See FACTS, at ¶¶ 26, 27, 31.) See Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 310 (3d Cir. 1999) ("Both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith. . . . Neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability.") (Internal quotation and citation omitted).

## CERTIFICATE OF SERVICE

I, Michael J. Ossip, hereby certify that the foregoing Motion for Summary Judgment and Memorandum of Law in Support was served by U.S. mail, postage prepaid, this 24th day of April, 2003, upon the following:

Richard J. Orloski, Esq.
Orloski, Hinga, Pandaleon & Orloski
111 North Cedar Crest Boulevard
Allentown, PA  18104-4602

Attorneys for Plaintiff


MICHAEL J. OSSIP