IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD KECK, | : |
| Plaintiff, | : |
| v. | : CIV. A. NO. 02-CV-4071 |
| PPL ELECTRIC UTILITIES CORPORATION, | : |
| Defendant. | : |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO**

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant PPL Electric Utilities Corporation ("PPL") respectfully submits that Plaintiff Richard Keck ("Plaintiff") has failed to establish the essential elements of his claim that PPL violated the Americans with Disabilities Act, 42 U.S.C. §12101 et seq. ("ADA"), by denying him certain enhanced retirement benefits provided for in the collective bargaining agreement ("CBA") and by denying him the right to bump a more junior employee upon his return from his long-term disability ("LTD") leave. Moreover, his own Motion for Summary Judgment demonstrates that the enhanced benefits and bumping rights to which plaintiff lays claim derive entirely from the CBA, and therefore this action is preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C., §185 ("LMRA").

A. **PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO HIS ADA CLAIM.**

Plaintiff correctly states that in order to prove a claim under the ADA, he must first establish a prima facie case by demonstrating that:

1. he has a disability as defined under the ADA;

    2.    he was a qualified individual with a disability (that is, he was able to perform the essential functions of his position with or without reasonable accommodation); and

    3.    he suffered an adverse employment action because of his disability.

If plaintiff can establish a prima facie case of disability discrimination, he must then establish that PPL's legitimate reasons for denying him the enhanced retirement benefits and the right to bump upon his return from his LTD leave were pretexts for discrimination because of his disability.

### 1. Plaintiff Has Failed To Establish That He Was A Qualified Individual With A Disability Within The Meaning of The ADA.

The sole basis for Plaintiff's claim that he has a "disability" within the meaning of the ADA is his reliance upon Stipulated Facts 1 and 10. (Plaintiff's Memorandum, p. 14). Stipulated Fact No. 1 simply provides background information regarding Plaintiff's date of hire and when he became a Designer-Drafter, and obviously does not support this proposition. In Stipulated Fact No. 10, the parties simply stipulated that Plaintiff reported "off from work" beginning on February 1, 1999 for medical reasons, relying upon a January 29, 1999 physician's note which indicated that plaintiff was "fully disabled" due to "major depression." This does not establish that Plaintiff suffered from an impairment that substantially limited a major life activity; all Plaintiff has established is that he qualified for leave under PPL's accrued sick leave and long-term disability policies.

Plaintiff's reliance upon the fact that he was found to be "disabled" within the meaning of PPL's sick leave and LTD policies to support his claim that he suffered from an ADA disability is misplaced. The EEOC has made clear that not every injured employee will meet the ADA definition of a qualified individual with a disability:

> Since the definition of the term 'disability' under the ADA is tailored to the purpose of eliminating discrimination prohibited by the ADA, it may differ from the definition of 'disability' in other laws drafted for other purposes. For example, the definition of a "disabled veteran" is not the same as the definition of an individual with a disability under the ADA. Similarly, an individual might be eligible for disability retirement but not be an individual with a disability under the ADA.

EEOC Compliance Manual, Volume II, Section 901.2 (1995) (available at www.eeoc.gov):

Similarly, in the context of workers' compensation recipients, the EEOC has distinguished between an employee's eligibility for benefits and an ADA "disability." See A Technical Assistance Manual on the Employment Provisions (Title I) of the Americans with Disabilities Act, Equal Employment Opportunity Commission (January 1992), Section 9.1, where the EEOC stated:

> Whether an injured worker is protected by the ADA will depend on whether or not the person meets the ADA definitions of an "individual with a disability" and "qualified individual with a disability." …. The person must have an impairment that "substantially limits a major life activity," have a "record of" or be "regarded as" having such an impairment. S/he also must be able to perform the essential functions of a job currently held or desired, with or without an accommodation.
>
> Clearly, not every employee injured on the job will meet the ADA definition. Work-related injuries do not always cause physical or mental impairments severe enough to "substantially limit" a major life activity. Also, many on-the-job injuries cause non-chronic impairments which heal within a short period of time with little or no long-term or permanent impact. Such injuries, in most circumstances, are not considered disabilities under the ADA.
>
> The fact that an employee is awarded workers' compensation benefits, or is assigned a high workers' compensation disability rating, does not automatically establish that this person is protected by the ADA. In most cases, the definition of disability under state workers' compensation laws differs from that under the ADA, because the state laws serve a different purpose. Workers' compensation laws are designed to provide needed assistance to workers who suffer many kinds of injuries, whereas the ADA's purpose is to protect people from discrimination on the basis of disability.

Indeed, in a case relied upon by plaintiff in his Motion for Summary Judgment, <u>Horth v. General Dynamics Land Systems, Inc.</u>, 960 F. Supp. 873 (M.D. Pa. 1997), in granting the employer's motion for summary judgment, the court made clear the legal distinction between a finding of "disability" for purposes of workers' compensation or other benefit determinations and the ADA. The court held that "[t]o the extent that Horth relies upon the workers' compensation determination that he had a 'temporary total disability,' such reliance is misplaced. Courts have noted that 'social security determinations…are not synonymous with a determination of whether a plaintiff is a 'qualified person for purposes of the ADA.'" 960 F.Supp. at 880. <u>See also</u> <u>Robinson v. Neodata Services, Inc</u>, 94 F.3d 499, 502 n.2 (8th Cir. 1996) (noting that "social security determinations . . . are not synonymous with a determination of whether a plaintiff is a 'qualified person for purposes of the ADA.'"). Thus, Plaintiff has failed to establish that he suffered from a disability within the meaning of the ADA, thereby warranting denial of his Motion for Summary Judgment.

Similarly, plaintiff has failed to establish that he was a "qualified individual with a disability." He admits that he did not request that his leave of absence that began in February of 1999 be considered a reasonable accommodation under the ADA (Plaintiff's Memorandum, p. 4), and that, while he was out on LTD leave, he was "unable to perform the essential functions of a Designer/Drafter position." (Plaintiff's Memorandum, p. 6).

    2.    **Plaintiff Has Failed to Establish That He Suffered An Adverse Employment Action Because Of His Alleged Disability**

Even assuming, <u>arguendo</u>, that Plaintiff can establish that he was a qualified individual with an ADA-qualifying disability, he has failed to establish that he was adversely affected because of that disability. As PPL has pointed out in its own Motion for Summary Judgment,

beginning at page 15, to the extent Plaintiff lost the opportunity to receive enhanced benefits or bump a junior employee when PPL eliminated his position, that occurred not because of his disability, but because he was on a leave of absence. Because the ADA does not require employers to give non-working, disabled employees the same treatment as working, non-disabled employees, he cannot establish this essential element of his claim. See Horth, *supra*, 960 F. Supp. at 881-82, where the court rejected the plaintiff's argument that his employer's denial of early retirement benefits because he was receiving workers' compensation benefits violated the ADA, even if the plaintiff had established that he had an ADA disability:

> Essentially, Horth argues that the exclusion of workers' compensation receipients evidences an intent to discriminate based on disability. [footnote omitted]. Although it is true that every employee receiving workers' compensation benefits is ineligible for special early retirement benefits under the Plan, it does not follow that every employee receiving workers' compensation benefits has a "disability" under the ADA. A determination of disability by a workers' compensation judge does not equate to a "disability" under the ADA.

Thus, the fact that Plaintiff was considered to be "disabled" for purposes of his entitlement to benefits under PPL's LTD Plan, and therefore was not deemed by PPL to be eligible for the enhanced retirement benefits available only to employees who are "displaced" under the CBA, does not translate to the denial of an employment benefit because of an ADA-qualifying disability.

With respect to Plaintiff's claim that PPL's denial of his claim to bumping rights constituted an adverse employment action, it is clear that the ADA does not require an employer to permit a qualified individual with an ADA disability to bump another employee. Thus, PPL's denial of such an alleged right simply was not an adverse employment action. See Smith v. Midland Brake, Inc., 180 F.3d 1154, 1175 (10th Cir. 1999) ("Under the terms of the statute, if a position is not vacant, it is not reasonable to require an employer to bump another employee in

5

order to reassign a disabled employee to that position"), <u>citing</u>, White v. York International Corp. 45 F.3d 357, 362 (10th Cir. 1995) ("The ADA does not require an employer to…reassign an employee to an occupied position."); Eckles v. Consolidated Rail Corp., 94 F.3d 1041, 1047 (7th Cir. 1996) ("The suggestion that reassignment be to a vacant position suggests that Congress did not intend that other employees lose their positions in order to accommodate a disabled co-worker."); H.R. Rep. No. 101-485 (II), at 63 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 345 ("The Committee also wishes to make clear [that] reassignment need only be to a vacant position – 'bumping' another employee out of a position to create a vacancy is not required." See also EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, at page 39 (October 17, 2002) (available at www.eeoc.gov) ("The employer does not have to bump an employee from a job in order to create a vacancy, nor does it have to create a new position.").

Nor can Plaintiff establish that he suffered an adverse employment action when PPL denied him the enhanced retirement benefits that are available under the CBA only to displaced employees. In essence, Plaintiff is arguing that PPL discriminated against him when it did <u>not</u> terminate his employment, but instead maintained him on a two-year leave of absence and offered him reinstatement to a position upon his return from that extensive leave. As was set forth in PPL's Motion for Summary Judgment, PPL went above and beyond any statutorily prescribed duty it owed Plaintiff when it afforded him the right to be reinstated into a vacant position upon his return from his two-year LTD leave, pursuant to the CBA's Exhibit L. (Defendant's Memorandum, p. 16). Moreover, PPL made every effort to place Plaintiff into a vacant position upon his return from LTD leave, but Plaintiff blocked such efforts by refusing to provide PPL with an unrestricted medical release, rejecting PPL's proposed job vacancies, and

6

voluntarily electing to retire. (See Stipulated Facts at ¶¶ 26, 27, 31). Indeed, Plaintiff concedes, at page 8 of his own Memorandum, that PPL notified him of several vacant positions for which he might be eligible, but that he "elected not to pursue any of these jobs," insisting instead that he be reinstated to a Designer/Drafter position.

Thus, having failed to establish any of the essential elements of an ADA claim, Plaintiff's Motion For Summary Judgment must be denied.

### B. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT MAKES CLEAR THAT HIS ADA CLAIMS ARE PREEMPTED BY SECTION 301 OF THE LMRA.

In its Motion for Summary Judgment, PPL established that, because Plaintiff's alleged rights to enhanced retirement benefits and bumping derived solely from the CBA, and because his ADA claims require the Court to interpret the terms of that CBA, his claims are pre-empted by Section 301 of the LMRA and barred by his failure to exhaust his contractual remedies. Plaintiff's Motion for Summary Judgment, in which he asserts an entitlement to rights provided by the CBA, demonstrates that such claims are, indeed, preempted.

Plaintiff sets forth the basis for his claims as follows:

> Plaintiff believes that Defendant violated the CBA in his case: 1) by denying him the right to bump Marquette and be reinstated into a Designer/Drafter position upon his return from LTD leave in September, 2001; and 2) by denying him the enhanced retirement benefits outlined in CBA Article X upon his retirement from PPL on November 1, 2001.

(Plaintiff's Memorandum, p. 10). Thus, it is clear that Plaintiff is seeking to establish an entitlement to rights provided to him solely by virtue of the CBA. Asserting that PPL's reasons for denying him these CBA-generated rights were a pretext for unlawful discrimination, Plaintiff insists that pretext can be shown because PPL's reliance upon Exh. L of the CBA, rather than

Article X of the CBA, was wrong as a matter of contract interpretation. (Plaintiff's Memorandum, pp. 15-18). In support of this assertion, Plaintiff claims that PPL cannot establish a legitimate, non-discriminatory reason for its action because, in his view:

- Article X provides the only way under the CBA to eliminate positions (Plaintiff's Memorandum, p. 15);

- his job was never eliminated pursuant to the CBA (Plaintiff's Memorandum, p. 16);

- PPL's reliance upon the October 11, 1999 letter to the Union was "contrary to the requirements of Article X" (Plaintiff's Memorandum, p. 18) and;

- PPL's rationale for its actions is "improper under Article X of the [CBA]" (Plaintiff's Memorandum, p. 18).

Thus, Plaintiff is asking this Court to step into the shoes of an Arbitrator and interpret the CBA and determine whether Plaintiff should have been treated under Exh. L, as PPL asserts, or Article X, as Plaintiff asserts. In order to address the validity of Plaintiff's entitlement to the enhanced pension and bumping rights he seeks, this Court will, by necessity, have to assume the role of an Arbitrator and determine which party's contractual interpretation is correct under the CBA. However, Plaintiff failed to take advantage of his right to raise these issues pursuant to the CBA's grievance and arbitration procedures. Plaintiff cannot circumvent these mandatory procedures by masking a contractual claim as one for statutory violation; to the contrary, it is well-settled that an employee's claim that rests upon an interpretation of a CBA is preempted by Section 301 of the LMRA. (See Defendant's Memorandum, pp. 12-15).

Therefore, PPL respectfully submits that plaintiff's ADA claims are pre-empted by Section 301 of the LMRA. Because plaintiff failed to exhaust his contractual remedies under the CBA, those claims must be dismissed.

C.  **CONCLUSION**

For the reasons set forth in PPL's Motion for Summary Judgment, and as set forth herein, PPL respectfully requests the Court to deny Plaintiff's Motion for Summary Judgment and grant its Motion for Summary Judgment.

                        Respectfully submitted,

                        _____
                        MICHAEL J. OSSIP (I.D. NO. 30912)
                        MORGAN, LEWIS & BOCKIUS LLP
                        1701 MARKET ST.
                        PHILADELPHIA, PA 19103
                        215-963-5761
                        FAX: 215-963-5001

                        ANDREW K. WILLIAMS (I.D. NO. 81565)
                        PPL SERVICES CORP.
                        2 North Ninth Street
                        Allentown, PA 18101
                        (610) 774-4114

                        Attorneys for Defendant
                        PPL Electric Utilities Corporation

Dated: May 8, 2003

## CERTIFICATE OF SERVICE

I, Michael J. Ossip, hereby certify that the foregoing Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment was served by Federal Express, this 8th day of May, 2003, upon the following:

>Richard J. Orloski, Esq.
>Orloski, Hinga, Pandaleon & Orloski
>111 North Cedar Crest Boulevard
>Allentown, PA  18104-4602
>
>Attorneys for Plaintiff

_____
MICHAEL J. OSSIP