IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD KECK, | : | |
|       Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PPL ELECTRIC UTILITIES CORP., | : | No. 02-4071 |
|       Defendant. | : | |

## MEMORANDUM AND ORDER

**SCHILLER, J.**                                                                                            July 18, 2003

      Plaintiff Richard Keck commenced this action against Defendant PPL Electric Utilities Corporation ("PPL") on June 26, 2002, alleging that PPL violated the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*.[1] The parties have filed cross-motions for summary judgment. For the reasons set forth below, I grant Defendant's motion and deny Plaintiff's motion.

**I.        BACKGROUND**

      **A        Collective Bargaining Agreement Provisions at Issue**

      Plaintiff began working at PPL on February 7, 1966. (Stip. 1.)[2] In May 1991, Plaintiff became a Designer-Drafter in PPL's Transmission and Design Department. (*Id.*) As a Designer-Drafter, Plaintiff was a member of the bargaining unit represented by Local 1600 of the International Brotherhood of Electrical Workers ("Local 1600"). (Stip. 3.) PPL and Local 1600 entered into a Collective Bargaining Agreement ("CBA") that became effective May 18, 1998 and governed the terms of Plaintiff's employment at the times relevant to this action. (Stip. 5.)

---

[1] Plaintiff's Complaint includes a claim under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. By agreement of counsel, this claim was dismissed on October 1, 2002.

[2] As used herein, "Stip. ____" refers to the undisputed facts set forth in numbered paragraphs in the parties' Stipulation of Facts.

The legal issues in this case revolve around PPL's obligations, if any, when Plaintiff attempted to return from long-term disability leave ("LTD") and then retired. Certain provisions of the CBA relate to these issues.

Exhibit L of the CBA, entitled "Long-Term Disability Conditions of Return," governs employees returning from LTD leave. (CBA at 201-02.) Exhibit L provides:

> Employees either notifying the Company or returning to the Company after six (6) months, but less than two (2) years from the effective date of their LTD status shall return to their former job classification and former work location *provided they are capable of performing the duties of the job and such a vacancy exists*. . . . If a job vacancy in their former job classification at their former work location is not available, employees shall be returned to an available job vacancy within the scope of their experience and skills. . . . They shall receive the rate of pay commensurate with the job to which they are returned.

(CBA, Ex. L, D.2 (emphasis added).)[3]

Article X of the CBA governs the treatment of displaced employees, ages fifty-five and older, who elect to retire upon being displaced. Article X provides, inter alia, the following:

> Employees whose work has been bumped by [the placement] process may retire if eligible, elect enhanced severance, select layoff or proceed through the placement process. . . . Employees who are displaced, bumped or qualify as volunteers for displacement will be eligible for special early retirement benefits if they have attained the age 55 or over at any time prior to placement.

(CBA, Art. X § 1.) On June 26, 2000, while on disability leave, Plaintiff turned fifty-five-years-old. (Stip. 18.)

Article III of the CBA sets forth a process by which aggrieved employees may initiate grievance and arbitration proceedings under the CBA (Stip. 6), and Article III contains a broad grievance clause: "The term grievance shall mean any dispute or disagreement over the meaning and

---

[3] The relevant portions of the CBA are attached to the parties' Stipulation of Facts, filed April 15, 2003, as Exhibit A.

application of the terms and provisions of this Agreement. . . ." (CBA, Art. III, Section 1.) Furthermore, if the dispute regarding the meaning or application of the CBA is not resolved, "either party [has] the right to submit it to arbitration. . . ." (CBA, Art. III § 7.)

### A.     Events Leading up to Plaintiff's Retirement

On February 1, 1999, Plaintiff reported "off from work" and subsequently submitted a physician's note in support of his need to take leave that stated Plaintiff was "fully disabled" due to "major depression." (Stip. 10.) Plaintiff did not request that his leave be considered a reasonable accommodation under the ADA, nor did he specify a date on which he anticipated returning to work. (Stip. 11.)

On October 11, 1999, Plaintiff's supervisor, Robert Sproesser, Manager of the Transmission and Design Department (Stip. 2), sent a letter to Local 1600 indicating that PPL did "not plan to back fill" Plaintiff's position. (Stip. 13, Ex. B.) PPL did not formally notify Local 1600 or hold any meeting with Local 1600 in connection with its decision not to backfill Plaintiff's position. (Stip. 14.)[4] PPL notified Local 1600 on January 7, 2000 that it planned to displace two Designer-Drafters. (Stip. 15, Ex. C.)  Local 1600 identified two individuals, Edward Bankowski and Michael Washychyn, for displacement. (Stip. 15.) Both Mr. Bankowski and Mr. Washychyn were over the age of fifty-five and received the enhanced retirement benefits outlined in Article X of the CBA. (Stip. 16.)

---

[4] Had PPL decided to eliminate Plaintiff's position, it would have been required to send notice to and meet with representatives of Local 1600. (CBA, Art. X.) PPL's decision not to backfill Plaintiff's position resulted in the absence of a Designer-Drafter position that Plaintiff could return to after his LTD leave.

Following the displacement of Mr. Bankowski and Mr. Washychyn, Marianne Keck, Plaintiff's wife and a PPL employee, sent an email inquiry about PPL's plans for Plaintiff upon his return from LTD leave. (Stip. 19.) In response to the email, Rudy Moyer – a member of PPL's Labor Relations Group – advised Mrs. Keck that Plaintiff should contact Mr. Sproesser. (*Id.*)

On August 22, 2001, Plaintiff wrote to Mr. Sproesser and indicated that he intended to resume working on September 24, 2001. Plaintiff's letter stated: "In accordance with Exhibit 'L,' Section I, Paragraph D, subparagraph 2 of the [CBA], please be informed of my medical release to return to work. . . ." (Stip. 21.) In the same letter, Plaintiff also requested that his name be listed on PPL's voluntary retirement list. (*Id.*)

After receiving Plaintiff's August 22, 2001 letter, Mr. Sproesser contacted Andrew Megna, PPL Labor Relations Administrator, to determine how Plaintiff's return to work should be handled under the CBA. (Stip. 22.) Mr. Megna then consulted with his supervisor and other members of PPL's Labor Relations Group. (*Id.*) The Labor Relations Group took the position that Exhibit L, and not Article X, of the CBA governed Mr. Keck's return to work. (*Id.*) Mr. Megna informed Mr. Sproesser of the Labor Relations Group's position. (Stip. 23.)

Because there was no vacant Designer-Drafter position, PPL began looking for another position for which Plaintiff was qualified and medically able to perform. (Stip. 24.) On August 29, 2001, Doris Peters, PPL Occupational Health Supervisor, asked Plaintiff to sign a release so that PPL could obtain and review his medical records in order to determine which positions would be appropriate for Plaintiff. (Stip. 25.) Mr. Keck submitted a release that was expressly limited to "information relevant to Designer/Drafting Civil/Structural Drafting Position Job." (Stip. 26.)

On September 21, 2001, Mr. Sproesser and Mr. Megna notified Plaintiff of several vacant positions for which Plaintiff might have been eligible. (Stip. 27.) These positions paid less than the Designer-Drafter position (*Id.*), and Plaintiff elected not to pursue any of these positions. (*Id.*) Moreover, Mr. Keck insisted that he be reinstated to a Designer-Drafter position and requested that he be permitted to "bump" a more junior Designer-Drafter, Richard Marquette. (*Id.*)

On or about September 24, 2001, Plaintiff requested and received a calculation of his estimated retirement benefits from Sandi Hausman, PPL's Employee Benefits Representative. (Stip. 29.) On September 28, 2001, Douglas Rehrer, PPL's Manager of Health and Security, sent an email to Local 1600 requesting the union's assistance in securing an unrestricted medical release from Plaintiff in order for PPL to determine what job vacancies were appropriate for Plaintiff. (Stip. 30, Ex. D.) Also on September 28, 2001, Ms. Peters sent Plaintiff a second letter requesting that he sign an unrestricted medical release. (Stip. 30.)

On October 7, 2001, Plaintiff submitted a letter to PPL that indicated his intent to retire effective November 1, 2001. (Stip. 31, Ex. E.) Plaintiff retired on that date. (Stip. 31.) Plaintiff did not receive any pay from September 24, 2001 through November 1, 2001. (Stip. 33.) Upon his retirement, Plaintiff began receiving the standard retirement benefits but did not receive the enhanced benefits available to employees over age fifty-five who elect to retire upon being displaced. (Stip. 32.)

At some time which has not been identified by the parties, Plaintiff had a discussion with Local 1600's Steward, Keith Lambert. At his deposition, Plaintiff testified that Mr. Lambert advised him to file a grievance, but he chose not to do so. (Stip. 35.) Plaintiff testified that he did not file

a grievance because he believed it "would take ten years to get to his case." (Stip. 36; Keck Dep. at 48-49.) The time period for filing a grievance has expired. (CBA Art. III § 3.)

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that the Company's treatment of him violated the ADA. (Stip. 37.) On April 2, 2002, the EEOC dismissed Plaintiff's charge and issued a Right to Sue letter. (*Id.*)

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of identifying those portions of the record that it believes illustrates the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the non-moving party has the burden of proof on a particular issue at trial, the moving party meets its burden by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the moving party meets this burden, the non-moving party must offer admissible evidence that establishes a genuine issue of material fact that should proceed to trial. *See id.* at 324; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). In order to meet this burden, the opposing party must point to specific, affirmative evidence in the record and not simply rely on mere allegations, conclusory or vague statements, or general denials in the pleadings. *See Celotex*, 477 U.S. at 324.

"Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989). The non-moving party does not, however, need to produce evidence in a form that would be admissible in order to avoid summary judgment, *id.*, "as long as the evidence could be later presented in a form that 'would be admissible at trial' – i.e. reducible to admissible form – it can be used to defeat summary judgment." *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990) (*citing Williams*, 891 F.2d at 466 n.12). A court may grant summary judgment if the non-moving party fails to make a factual showing "sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In making this determination, the non-moving party is entitled to all reasonable inferences. *See Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

**III.    DISCUSSION**

Plaintiff contends that (1) PPL should have permitted him to bump Mr. Marquette from his Designer-Drafter position so that Plaintiff could have resumed working at the position upon his attempted return from LTD leave in September 2001, or (2) should have paid Plaintiff the enhanced retirement benefits outlined in Article X of the CBA after he retired. Plaintiff concludes that the fact that PPL did neither amounts to discrimination in violation of the ADA. Plaintiff's arguments are unpersuasive, however, and Defendant is entitled to summary judgment for two reasons: (1) Mr. Keck failed to exhaust grievance procedures, and (2) he is unable – as a matter of law – to establish that he was discriminated against on the basis of his disability.

### A. Failure to Exhaust Grievance Procedures

Section 301 of the Labor Management Relations Act ("LMRA") provides for federal jurisdiction over "[s]uits for violation of contracts between an employer and labor organization," and "authorizes federal courts to fashion a body of federal law for [their] enforcement. . . ." 29 U.S.C. § 185(a)(2003); *Textile Workers Union of Am. v. Kincoln Mills of Ala.*, 353 U.S. 448, 450-51 (1957). The Supreme Court has held that when a dispute arises under collective bargaining agreements that provide for the submission of disputes to arbitration, the aggrieved employee generally must exhaust arbitration procedures before filing suit. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965) (holding that individual employees wishing to assert contract grievances must attempt use of contract grievance procedure agreed upon by employer and union). Put differently, "[i]t has long been an established precept of federal labor law that the method of dispute resolution agreed to by the parties in their labor agreement takes primacy over civil actions for breach of contract." *Sebrowski v. Pittsburgh Press Co.*, 188 F.3d 163, 168 (3d Cir. 1999).

Plaintiff correctly argues that he is entitled to pursue an ADA claim in this Court. *See Wright v. Univ. Maritime Serv. Corp.*, 525 U.S. 70, 80 (1998) (holding that union-negotiated waiver of employee's statutory right to judicial forum is enforceable – if at all – only if waiver is "clear and unmistakable").[5] As such, Plaintiff's claim is not preempted by the LMRA to the extent it seeks to remedy violations of the ADA. *See id.* at 78-79 (explaining that claim can go forward in federal court when claim "ultimately concerns not the application or interpretation of any CBA, but the meaning of a federal statute"). However, Mr. Keck's objection to PPL's conduct, though styled as

---

[5] The CBA does not contain such a "clear and unmistakable waiver."

an ADA claim, amounts to a dispute about the interpretation of the CBA. Specifically, Plaintiff alleges that the decision not to backfill Plaintiff's position provided a means by which PPL could eliminate Plaintiff's position without incurring the obligation to pay Plaintiff the enhanced pension benefits. Had PPL displaced him, Plaintiff's argument continues, PPL would have been required to meet with Local 1600 – which might have opposed the displacement or proposed that it be done after Plaintiff turned fifty-five – and he arguably would have become entitled to the enhanced benefits or the right to bump another employee. Any merit to this argument, however, results from a possible violation of the rights secured under the CBA. For this reason, Plaintiff's claim is properly understood as one for violations of his rights under the CBA and not under the ADA. Viewed as such, and in light of the undisputed fact that Plaintiff never filed a grievance, Defendant is entitled to summary judgment. *See Valdino v. A. Valey Eng'rs*, 903 F.2d 253, 266 (3d Cir. 1990) ("While claims resting on the language of [a federal statute] are clearly cognizable[,] . . . we believe that claims which rest on interpretations of the underlying collective bargaining agreement must be resolved pursuant to the procedures contemplated under the LMRA, specifically grievance, arbitration, and, when permissible, suit in federal court under section 301.").

    **B.**    **Plaintiff's Inability to Establish Prima Facie Case**

The ADA provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2003). To present a prima facie case of discrimination under the ADA, Mr. Keck must demonstrate that: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential

9

functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Tech., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998).

Turning to the third element,[6] Plaintiff has been unable to express how he suffered an adverse employment decision "as a result of discrimination." The conduct Plaintiff complains of occurred after he returned from a leave absence. Plaintiff has presented no evidence that Plaintiff was treated differently from other employees returning from a leave of absence. Additionally, beyond conclusory allegations, Plaintiff has failed to point to any evidence supporting his allegation that PPL's actions were discriminatory.

Assuming, arguendo, that Plaintiff could succeed in making out a prima facie case, the burden of production would then shift to Defendant to "articulate some legitimate, nondiscriminatory reason" for its actions. *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 (3d Cir. 1997) (*quoting McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). The defendant's burden at this stage is relatively light: it is satisfied if the defendant articulates any legitimate reason for the discharge; the defendant need not prove that the articulated reason actually motivated an adverse employment action. *See Woodson*, 109 F.3d at 920 (*citing Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)). Here, PPL asserts that its actions were based on its interpretation of the CBA. While it is not necessary in the context of this action to decide whether PPL correctly interpreted the CBA,

---

[6] With respect to the first element of Plaintiff's prima facie case, PPL does not concede that Mr. Keck was a qualified individual with a disability under the ADA. In moving for summary judgment, Plaintiff merely cites the undisputed fact that Mr. Keck's physician note stated that Mr. Keck was "fully disabled' due to "major depression." (Stip. 10.) Nonetheless, this issue presents factual disputes appropriately resolved at trial. Additionally, neither party has adequately addressed the facts of this case as they relate to the second element. For these reasons, I address only the third element of the prima facie case.

it is clear that PPL has proffered a legitimate, non-discriminatory reason under the CBA for its treatment of Mr. Keck. Furthermore:

> To discredit the employer's proffered reason [for summary judgment purposes], [ ] the plaintiff cannot simply show that the employer's decision was wrong or mistaken . . . . Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons.

*Fuentes*, 32 F.3d at 765 (citation and internal quotation marks omitted). Additionally, Plaintiff may defeat a motion for summary judgment by pointing "to some evidence, direct or circumstantial, from which a jury could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (holding that plaintiff must convince factfinder at trial "both that the reason was false, and that discrimination was the real reason"). Mr. Keck has made no attempt to do so, and the record is devoid of any indication that PPL's actions were based on discriminatory animus or ill will due to disability.

### IV.    CONCLUSION

Plaintiff's claim is an attempt to re-cast a dispute about the application and interpretation of the CBA as a claim for discrimination against a person with a disability. Because Plaintiff failed to file a grievance and has not made any showing that Defendant's actions were discriminatory, Defendant is entitled to summary judgment.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD KECK,** | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **PPL ELECTRIC UTILITIES CORP.,** | : | No. 02-4071 |
| Defendant. | : | |

## ORDER

**AND NOW**, this **18th** day of **July**, **2003**, upon consideration of the parties' Stipulation of Facts, their cross-motions for summary judgment, and their responses thereto, and following oral argument thereon, and for the foregoing reasons, it is hereby **ORDERED** that:

1. Plaintiff Richard Keck's Motion for Summary Judgment (Document No. 11) is **DENIED**.

2. Defendant PPL Electric Utilities Corporation's Motion for Summary Judgment is **GRANTED**.

3. Summary Judgment is granted in favor of Defendant PPL Electric Utilities Corporation and against Plaintiff Richard Keck.

4. The Clerk of Court is directed to close this case for statistical purposes.

BY THE COURT:

_____
**Berle M. Schiller, J.**